**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

**\* \* \***

NOEL WAITE,      )
           )
    Plaintiff,   )
           )   2:11-cv-01741-LRH-VCF
v.          )
           )  **REPORT & RECOMMENDATION**
CLARK COUNTY COLLECTION )
SERVICES, LLC *et al.,*   )  (Motion for Attorneys' Fees #13)
           )
    Defendant.  )
           )

<u>**REPORT & RECOMMENDATION**</u>

   Before the court is plaintiff Noel Waite's Motion for Attorney Fees. (#13). Defendant Clark County Collection Services, LLC (hereinafter "Collection Services") filed an Opposition (#14), and plaintiff Waite filed a Reply (#25).

<u>**Introduction**</u>

   Collection Services does not dispute that plaintiff's counsel prosecuted a successful action to enforce the Fair Debt Collection Practices Act, 15 U.S.C.§ 1692 *et seq.* (hereinafter "FDCPA"). Pursuant to 15 U. S. C. 1692k(a)(3) defendant is liable for the costs of litigation, together with a reasonable attorneys' fee as determined by the court.

   In addition to challenging plaintiff's fee request as excessive, Collection Services asserts that employees of Lemberg & Associates, LLC (hereinafter "Lemberg Firm") violated this courts local rules and engaged in the unauthorized practice of law. (#14). Collection Services argues that all fees and costs should be denied as a sanction for the unlawful activities. *Id.*

   Considering the evidence and the arguments of counsel, the court concludes that, while technically in compliance with applicable local court rules, the Lemberg Firm's business model, as practiced before this court, impairs the court's ability to regulate the conduct of attorneys working on cases filed in this District. These circumstances, standing alone, do not warrant precluding the award

of appropriate fees and costs.  Findings of fact regarding these circumstances are called for, however, as these facts are relevant to the reasonableness inquiry and also may be of interest to our District Court Judges should they choose to consider amending our Local Rules in light of these findings.

The question of whether or not the unauthorized practice of law occurred here is an issue properly left for determination by the State Bar of Nevada Office's Bar Counsel, should it choose to investigate the matter.

For the reasons discussed below, the undersigned Magistrate Judge recommends that Plaintiff be awarded $426.80 in costs and $1,485.00 in attorneys fees.

**Background**

Plaintiff Waite filed her complaint against Collection Services on October 28, 2011, asserting claims for violations of the FDCPA and harassment.  (#1).  Attorney of record for plaintiff Waite is Jennifer Hsiao-Wei Tsai, of counsel to the Lemberg Firm *Id.*  In her filings, Ms. Tsai provided the court with her Las Vegas address and telephone number as well as the address and telephone number for the Lemberg Firm.  Ms. Tsai also provided the court with the email address JENNIFER@JTLAWGROUP.COM.  Collection Services filed an answer on December 7, 2012, asserting sixteen affirmative defenses.  (#6).

The court signed the parties' proposed discovery plan and scheduling order (#8) on March 26, 2012. (#9).  The discovery plan and scheduling order was electronically signed by Ms. Tsai and defense counsel Nicole E. Lovelock.  *Id.*  On May 15, 2012, Ms. Tsai filed plaintiff's acceptance of defendant's offer of judgment in the amount of $1,001.00. (#11).  On May 15, 2012, the Clerk of the Court entered judgment in favor of plaintiff Waite.  (#12).

On May 29, 2012, plaintiff Waite filed the instant motion for $4,520.00 in attorneys' fees and $426.80 in costs. (#13).  On June 15, 2012, defendant filed an opposition (#14) and a counter-motion for referral to the State Bar of Nevada (#15), which, pursuant to LR IB 1-3 and 28 U.S.C § 636(b)(1)(A), was automatically referred to the undersigned Magistrate Judge for hearing and final

determination.  On June 25, 2012, the Honorable Larry R. Hicks referred plaintiff's motion for attorneys' fees (#13) to the undersigned Magistrate Judge.  This referral, pursuant to LR IB 1-4 and 28 U.S.C. § 636(b)(1)(B), directs the undersigned to conduct hearings, including evidentiary hearings, and to submit to Judge Hicks proposed findings of fact and recommendations for disposition of the motion.  On July 11, 2012, Sergei Lemberg filed a verified petition for permission to practice *Pro Hac Vice*.  (#18).  Defendant Collection Services filed an opposition on July 12, 2012 (#19), and Sergei Lemberg filed a reply in support of his petition on July 13, 2012 (#20).

On July 26, 2012, the undersigned issued an order scheduling an evidentiary hearing for September 24, 2012.  (#24).  The order stated that the evidentiary hearing is necessary because, "[a]t this stage in the proceedings, it appears that a number of intertwined facts and legal issues must be resolved to enable disposition of these two motions (#13 and #15) and the petition (#18)." *Id.*  On August 6, 2012, plaintiff filed a reply in support of her motion for attorneys' fees (#13) and an opposition to defendant's counter-motion for referral to the State Bar of Nevada (#15).  (#25).  On August 24, 2012, plaintiff Waite filed a motion for sanctions pursuant to Rule 11.  (#28).  The motion for sanctions (#28) was referred to the undesigned, also pursuant to LR IB 1-4 and 28 U.S.C. § 636(b)(1)(B), for Review and Recommendation.

On September 4, 2012, the court issued a minute order scheduling a hearing on the motions for sanctions (#28) for September 24, 2012.  (#29).  The court ordered that any opposition to the motion for sanctions was due by September 13, 2012, and that any reply was due by September 20, 2012. *Id.*  On September 10, 2012, defendant Collection Services filed a reply in support of its motion for referral to the State Bar of Nevada.  (#32).  On September 13, 2012, defendant Collection Services filed a response to plaintiff's motion for sanctions under Rule 11 (#28).  (#34).  On September 19, 2012, the court entered an order requiring plaintiff Waite and a representative from Collection Services to be present at the September 24, 2012, hearing.  (#40).  On September 20, 2012, plaintiff filed a reply in support of her motion for sanctions under Rule 11.  (#42).

3

The court held an evidentiary hearing on September 24, 2012. (#44). At the beginning of the hearing, the undersigned Magistrate Judge granted Sergei Lemberg's petition to practice Pro Hac Vice (#18) and denied as moot defendant Collection Services's counter-motion for referral to the State Bar of Nevada (#15). *Id.* Sergei Lemberg, Olga Voytovych, Tammy Hussin, Mark A. Dubois, and plaintiff Waite testified at the first day of the evidentiary hearing. *Id.* At the conclusion of the testimony, court adjourned, and the hearing was continued until Tuesday, September 25, 2012, at 1:00 p.m. *Id.* On Tuesday, Ms. Tsai testified and counsel made closing arguments. (#47).

**Analysis**

### A.    Plaintiff's Motion (#13)

On May 29, 2012, Ms. Tsai, on behalf of plaintiff Waite, filed a notice of motion and motion for attorney's fees and costs (#13), a memorandum of law in support of the motion (#13-1), the declaration of Ms. Tsai (#13-2), the declaration of Sergei Lemberg (#13-3), and a Transaction Listing Report (hereinafter "Billing Record") (#13-4). Plaintiff asserts that her counsel seeks recovery for 18.9 hours of work, totaling $4,520 in attorneys' fees, and expenses for payment of fees for filing and serving the complaint, totaling $426.80. (#13). Plaintiff's seeks a total of $4,946.80 in attorneys' fees and costs. *Id.* The Billing Record demonstrates that Ms. Tsai billed for 8.9 hours, Ms. Hussin billed for 1.6 hours, Jody Burton billed for .5 hours, Jenny DeFrancisco billed for 1.3 hours, Olga Voytovych billed for 6.6 hours, and legal assistance staff billed for 1.1 hours. (#13-4).

The motion (#13) and Ms. Tsai's declaration (#13-2) represent that Ms. Tsai (1) "is lead attorney for [p]laintiff in this action," (2) "has been lead counsel in multiple consumer protection actions litigated in this District," (3) has an hourly rate of $300.00, which is "an hourly rate normally charged by attorneys in consumer protection cases in Nevada with similar experience and expertise," and (4) "attempted to settle this matter from the beginning," but needed assistance from "other Lemberg & Associates, LLC counsel who are experienced with handling FDCPA matters." Mr. Lemberg's declaration states that Ms. Tsai is "of counsel" to the Lemberg Firm and "represents multiple consumers

4

throughout Nevada." (#13-3).

Plaintiff's motion asserts that Ms. Hussin (1) is "a senior associate attorney" at the Lemberg Firm, (2) is admitted to practice in California and Colorado and to all four Federal Districts in California, and (3) has an hourly rate of $300.00. (#13). The motion also states (1) that Ms. Burton, a senior associate at the Lemberg Firm, and Ms. DeFrancisco, an associate at the Lemberg Firm, are admitted to practice in several other districts, but not Nevada, (2) that Ms. Burton is "lead counsel in numerous FDCPA actions around the country" and Ms. DeFrancisco is actively involved in many FDCPA actions at the firm, and (3) that the hourly rates are as follows: Burton's hourly rate is $300.00 and Ms. DeFrancisco's hourly rate is $250.00. *Id.*

### B.   Defendant's Opposition[1]

Defendant Collection Services asks this court to deny the motion for attorneys' fees, as the fees are "*per se* unreasonable because they are unlawful." (#14). Collection Services alleges that the case was "litigated almost exclusively" by the Lemberg Firm, "an out-of-state firm which is *not* licensed to conduct business in the State of Nevada" or to practice law in Nevada, whose attorneys did not file a *pro hac vice* application in this action. *Id.* Collection Services also questions Ms. Tsia's role as lead counsel or "of counsel," and asserts that "she can hardly be characterized as even a participating attorney." *Id.*

Collection Services states that Ms. Tsai billed for tasks that others completed[2], and that the matter was litigated by Lemberg Firm employees Ms. Voytovych, a paralegal in Stamford, Connecticut,

---

[1] Defendant Collection Services filed an opposition (#14) and a counter-motion (#15) in response to plaintiff's motion (#13). As the court denied the counter-motion (#15) as moot, the order will only discuss the arguments pertaining to the opposition (#14).

[2] Two entries on the Billing Record reflect that Ms. Tsai sent emails to opposing counsel on April 23, 2012, and on May 7, 2012. (#13-4). However, Collection Services asserts, and evidence demonstrates, that Ms. Hussin sent the emails and not Ms. Tsai. (#14). During the hearing, Mr. Lemberg admitted that he changed the time entries to reflect that Ms. Tsai performed the work, as it didn't make sense to him that Ms. Hussin would be emailing opposing counsel.

and Ms. Hussin, an attorney who is not authorized to practice law in Nevada.  *Id.*  Collection Services states that Ms. Hussin handled all settlement negotiations, and that Ms. Tsai did "next to nothing on this case until the filing of [the motion for attorneys' fees], and it appears that even this motion was prepared by Ms. Voytovych..." *Id.*  As such, Collection Services alleges that the fees are not recoverable and that the plaintiff's counsel has violated the Nevada Rules of Professional Conduct.  *Id.*

Collection Services also asserts that the attorneys' fees are excessive, and that counsel is "padding the billing," as counsel charged for items such as changing a telephone number, uploading documents from CMECF, the complaint being file stamped, etc (#13-4).  *Id.*  Collection Services states that the complaint was "cookie cutter" and nearly identical to other complaints in cases filed by the Lemberg Firm, and that the action settled shortly after the commencement of the action.  *Id.*  Defendant argues that plaintiff's counsel billed "an outrageous sum given the paltry work actually performed in this case." *Id.*  Collection Services objects to the costs in the amount of $350.00 for filing this action and $76.80 for serving the complaint because they were incurred by the Lemberg Firm.  *Id.*

Collection Services asks for the court to deny all out-of-state counsel's fees, reduce Ms. Tsai's hourly rate to $120.00, eliminate fees for all administrative work, reduce the time spent for the motion for attorneys' fees down to 1.0 hour, and deny claimed costs.  *Id.*

    **C.**    **Relevant Law**

        **1.**    **Request for Attorneys' Fees**

Pursuant to 15 U.S.C. §1692k(a)(3), "any debt collector who fails to comply with any provision of this chapter with respect to any person is liable to such person," and "in the case of any successful action to enforce the foregoing liability," is responsible for "the costs of the action, together with a reasonable attorney's fee as determined by the court."  The court must objectively evaluate the fees sought by taking the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983). As "cases may be overstaffed, and the skill and experience of lawyers vary widely, "[c]ounsel for the

prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."" *Id.* The party seeking fees has the burden of providing support for the request. *Id.* The court has discretion in making the fee determination, and may reduce or eliminate hours after taking into account several considerations. *Id* at 436-37.

## 2.    Unauthorized Practice of Law

Under Nevada Rule of Professional Conduct (hereinafter "Nevada Rules") 5.5(a), "[a] lawyer shall not: (1) [p]ractice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or (2) [a]ssist another person in the unauthorized practice of law." However, "[a] lawyer who is not admitted in this jurisdiction, but who is admitted and in good standing in another jurisdiction of the United States, does not engage in the unauthorized practice of law in this jurisdiction when:

(1) The lawyer is authorized to appear before a tribunal in this jurisdiction by law or order of the tribunal or is preparing for a proceeding in which the lawyer reasonably expects to be so authorized;

(2) The lawyer participates in this jurisdiction in investigation and discovery incident to litigation that is pending or anticipated to be instituted in a jurisdiction in which the lawyer is admitted to practice;

(3) The lawyer is an employee of a client and is acting on behalf of the client or, in connection with the client's matters, on behalf of the client's other employees, or its commonly owned organizational affiliates in matters related to the business of the employer, provided that the lawyer is acting in this jurisdiction on an occasional basis and not as a regular or repetitive course of business in this jurisdiction;

(4) The lawyer is acting with respect to a matter that is incident to work being performed in a jurisdiction in which the lawyer is admitted, provided that the lawyer is acting in this jurisdiction on an occasional basis and not as a regular or repetitive course of business in this jurisdiction;

(5) The lawyer is engaged in the occasional representation of a client in association with a lawyer who is admitted in this jurisdiction and who has actual responsibility for the representation and actively participates in the representation, provided that the out-of-state lawyer's representation of the client is not part of a regular or repetitive course of practice in this jurisdiction;

(6) The lawyer is representing a client, on an occasional basis and not as part of a regular or repetitive course of practice in this jurisdiction, in areas governed primarily by federal

law, international law, or the law of a foreign nation; or

(7) The lawyer is acting as an arbitrator, mediator, or impartial third party in an alternative dispute resolution proceeding.

Nevada Rule 5.5(b)(1)-(7).

A lawyer who is not admitted to practice in Nevada "shall not  (I) [e]stablish an office or other regular presence in this jurisdiction for the practice of law; (ii) [s]olicit clients in this jurisdiction; or (iii) [r]epresent or hold out to the public that the lawyer is admitted to practice law in this jurisdiction." Nevada Rule 5.5(d)(2).  Pursuant to 5.5(e), "[a] lawyer admitted to practice in another jurisdiction of the United States who acts in this jurisdiction pursuant to paragraph (b) of this Rule shall be subject to the Nevada Rules of Professional Conduct and the disciplinary jurisdiction of the Supreme Court of Nevada and the State Bar of Nevada as provided in Supreme Court Rule 99."  Nevada Rule 5.5(e)

Under the Local Rules of this court, "[a]n attorney who is not a member of the Bar of this Court, who has been retained or appointed to appear in a particular case, may do so only with permission of this Court. Application for such permission shall be by verified petition on the form furnished by the Clerk."  LR IA 10-2(a).  An attorney seeking to appear *pro hac vice* must file a verified petition demonstrating that several conditions are satisfied.  *Id*.  "Failure to comply timely with this Rule may result in the striking of any and all documents previously filed by such attorney, the imposition of other sanctions, or both."  LR IA 10-2(k).

The Ninth Circuit addressed the issue of the unauthorized practice of law in *Winterrowd v. American General Annuity Insurance,* 556 F.3d 815 (9th Cir. 2009).  In *Winterrowd,* the court considered whether the plaintiffs in an action in the Central District of California could recover attorney's fees generated by a member of the Oregon Bar who assists a member of the California Bar in litigating the action.  *Id* at 817.  Defendants argued that the out-of-state attorney's fees were not recoverable because the attorney violated the "State Bar Act or the Central District Local Rules."  *Id*

at 820. [3]

Before analyzing the issue, the court quoted Judge Friendly in observing that we live in an "age of increased specialization and high mobility of the bar," and stated that "largely because of the benefits of modern technology, hundreds of U.S.-based law firms are composed of many hundreds, or even thousands, of lawyers and support personnel contemporaneously doing business in many states and throughout the world." *Id* at 819-20 (quoting *Spanos v. Skouras*, 364 F.2d 161, 170 (2d Cir.1966)). The court held that it "may properly accommodate many of the realities of modern law practice, while still securing to federal courts the ability to control and discipline those who practice before them." *Id*.

In doing so, the court stated that there are two ways in which the plaintiffs could recover fees for the out-of-state attorney's work: (1) If the attorney at issue would have certainly been permitted to appear *pro hac vice* as a matter of course if she or he had applied, or (2) if the attorney's conduct did not rise to the level of "appearing" before the district court. *Id* at 822-23. The court found there was no suggestion, upon a review of the evidence or made by the defendants, that the out-of state attorney would not have been admitted. *Id* at 823. As the record was not developed fully as to the facts surrounding whether the out-of-state attorney would have been disqualified for other reasons enumerated in the court's Local Rules, the Ninth Circuit declined to rule based on this finding. *Id*.

With regard to the second circumstance permitting the recovery of fees for an out-of-state attorney, the Ninth Circuit held that the conduct of the attorney at issue "did not rise to the level of "appearing" before the district court." *Id*. The court found that the attorney's role was similar to "such litigation support or consultants, and distinguishable from an "appearance," as he (1) never appeared or argued in front of the district court, (2) never signed briefs, (3) only advised his son (the California attorney), (4) reviewed pleadings, (5) had minimal, non-exclusive contact with the client, (6) had no

---

[3]   The court held that "admission rules and procedure for federal court are independent of those that govern admission to practice in state courts," and that the Distirct Court had "[i]nappropriate[ly] reli[ed] on state authority to impose federal discipline" for the out-of-state attorney's actions. *Id* (citing *In rePoole*, 222 F.3d 618, 620-22 (9th Cir. 2000).

communication with opposing counsel, and (7) never physically entered the State of California in connection with the prosecution of the action. *Id* at 823-24 (citing *United States v. Wunsch,* 84 F.3d 1110, 1115 (9th Cir. 1996)(holding that an attorney had "appeared" when he identified himself as counsel in the court's appearance form, physically came into court, signed pleadings, and identified himself as counsel to opposing counsel).

The court also stated that the out-of-state attorney's work "was at all times filtered through [the California attorney] who was admitted to the Central District and subject to its discipline." *Id* at 824 (citing *Dietrich Corp. v. King Resources, Co.,* 596 F.2d 422 (10th Cir. 1979). The court also relied on the opinion of the ABA Committee on Professional Ethics, when it stated that "the local man must be admitted in the state and must have the ability to make, and be responsible for making, decisions for the lawyer group." *Id* at 824-25 (citing ABA Comm. on Prof'l Ethics Opinions, No. 316 (1967)). The court held that since the out-of-state attorney did not render legal services to the plaintiffs, and the California attorney "alone remained responsible to the plaintiffs," the plaintiffs may recover attorney's fees for the out-of-state attorney's work in the case. *Id* at 825. The Ninth Circuit continued by stating that this ruling does not adversely impact the "very important role *pro hac vice* admissions play," and that an attorney who appears in court, signs pleadings, or is the exclusive contact in a case with the client or opposing counsel must apply to practice *pro hac vice. Id.* The ruling stands for the proposition that an attorney may not receive fees if there is evidence he/she would not meet the legal qualifications to be admitted *pro hac vice* had he/she applied. *Id.*

Following the Ninth Circuit's ruling, this court addressed the same issue in *Vaiciunas v. Clark County Collection Service,* 2:10-CV-1740-RCJ-RJJ, 2011 WL 4737357 (D. Nev. Oct. 5, 2011). In *Vaiciunas*, the plaintiff sought an award of attorneys' fees pursuant to 15 U.S.C. §1692k(a). *Vaiciunas,* 2011 WL 4737357 *1. Defendant objected to the award, and asked the court to deny the request for fees, as the action was "exclusively" litigated by an out-of-state attorney who is not licensed to practice in Nevada and who did not apply to practice *pro hac vice. Id.* The court relied on the opinion in

*Winterrowd* in concluding that the out-of-state attorney did "appear" before this court without seeking *pro hac vice* admission. *Id* *3.

Upon review of the billing history submitted to the court, the out-of-state attorney (1) received the initial inquiry from the client regarding representation, (2) reviewed all facts, (3) contacted the client and discussed facts of the case and potential claims, (4) drafted the client-attorney agreement and delivered it to the client, (5) interviewed the client prior to drafting the complaint, (6) prepared the complaint and sent it to the client, (7) prepared the motion for default, (8) spoke with opposing counsel and confirmed an extension, (9) received and reviewed an email from the client, (10) received and reviewed the offer of judgment from defendant, (11) discussed the offer of judgment with the client, and (12) made a fee demand to the Defendant. *Id.* The court held that the out-of-state attorney did more than "simply render legal support" to the Nevada attorney, and that the billing history demonstrates that the Nevada attorney was merely the one signing the pleadings. *Id.* The court denied the counter-motion for referral to the State Bar and granted in part and denied in part the request for attorneys' fees. *Id.*

**D.     Discussion**

**1.     The Lemberg Firm**

The court finds that it is undisputed that plaintiff Waite, and all other plaintiffs in actions filed by the Lemberg Firm's "of counsel" attorneys in districts outside Connecticut, are clients of the Lemberg Firm. According to the testimony of several witnesses, plaintiff Waite found the Lemberg Firm online, filled out a form on the website, was contacted by Ms. Voytovych at the Lemberg offices in Connecticut, received, either via email or letter, a retainer agreement with the Lemberg Firm, and would call the Lemberg Firm regarding her case. The complaint, written discovery, and all subsequent pleadings were drafted by Lemberg Firm employee Ms. Voytovych using the Lemberg Firm's templates. Ms. Tsai utilized WestLaw provided by the Lemberg Firm to research issues relating to this action. The entire action was litigated using the Lemberg Firm's business model and case management procedures through ProLaw, a system that "of counsel" attorneys were "mandated" to adhere to. Upon a search of

this court's CMECF, the Lemberg Firm has represented clients in twenty-five (25) actions in this district in the last three years.

The court recognizes that there is no longer a rule limiting to a discrete number how frequently a *law firm* may be admitted to practice *pro hac vice*. A prior version of the applicable rule limited this frequency to five times in a three year period. *See* Local Rule IA 10-2(i)(1)(Revised 5/1/2006). Never-the-less, the court finds that the Lemberg Firm's number of appearances through the alleged "of counsel" attorneys is excessive.[4] It appears that the prior law firm frequency limitation was removed in light of the enactment of the Nevada Multi-Jurisdictional Practice Rules (hereinafter "Multi-Jurisdictional Rules"), which require all firms having an office in Nevada and one or more other jurisdictions to register with the State Bar of Nevada before establishing an office in this state and to pay an annual fee of $500.00. Multi-Jurisdictional Rule 7.5A[5]

Mr. Lemberg testified that the Lemberg Firm does not maintain offices in Nevada, and Ms. Hussin testified that the other Lemberg Office is located in California, where she practices. The court finds, however, that the Lemberg Firm did, at all material times, maintain an office in Nevada. Testimony revealed that Ms. Tsai was an employee of the Lemberg Firm, had a Lemberg Firm telephone number at her Nevada office, that she accessed and used, through a log-in and password, the ProLaw system maintained by the Lemberg Firm, and that she researched, in a Nevada office, using WestLaw provided by the Lemberg Firm. The evidence presented at the hearing establishes beyond contradiction

---

[4] The Undersigned recommends that the District Judges consider amending the Local Rules of this District to limit the number of *pro hac vice* appearances by members of a law firm, if that law firm has not complied with the State Bar of Nevada's Multi-Jurisdictional Law Firm registration requirements.

[5] Plaintiff's counsel Dennis L. Kennedy pointed out during closing argument that he testified at the Commission on Multi-Jurisdictional Practice Public Hearing on Friday, September 28, 2001. In that testimony he asserted that there "are some areas of great importance" with regard to out-of-state lawyers practicing in Nevada, including (1) competence, (2) discipline, (3) character and fitness, (4) professionalism, and (5) advertising. Mr. Kennedy stated that there has to be a scheme when permitting out-of-state attorneys to practice here that "ensures that [Nevada's] standards and norms are going to be met by anyone who comes here, not simply to ensure that someone who doesn't fly with them might be served after the fact." The Multi-Jurisdictional Practice Rules were adopted to accomplish those goals.

12

that the Lemberg Firm has, regularly and as a repetitive course of practice, represented clients whose claims are litigated in this District.  The State Bar of Nevada will ultimately decide whether the Lemberg Firm has violated the Multi-Jurisdictional Practice Rules, or whether it meets the applicable requirements, if the Lemberg Firm decides to apply to register as a Multi-Jurisdictional Firm.  Multi-Jurisdictional Rule 7.5A.

### 2.    Ms. Tsai as "Lead Counsel"

Upon review of the evidence presented during the evidentiary hearing, the court finds that Ms. Tsai was not actually lead counsel in this action.  During Ms. Tsai's testimony, she demonstrated a lack of understanding of Federal Court, the Federal Rules of Civil Procedure, and this court's Local Rules. This is also evidenced in the email dated January 20, 2011 (Plaintiff's Exhibit 20)[6], where Ms. Tsai referred to the Rule 26(f) conference as the "early case conference," and the email dated February 29, 2012, wherein Ms. Tsai stated that she "did not receive judge's scheduling order," when questioned regarding holding the Rule 26(f) conference and submitting the proposed discovery plan (Defendant's Exhibit 131).

Ms. Tsai's demeanor, including the speed, volume, and argumentative nature of her testimony, further supports the finding that Ms. Tsai was not competent to litigate this action in the role of lead counsel.  This was admittedly one of Ms. Tsai's first FDCPA cases, for which she needed to do weeks of research to prepare for.[7]  At one point during her testimony, Ms. Tsai referred to the FDCPA as the Federal Debt Collection Practices Act instead of the Fair Debt Collection Practices Act.  According to the Billing Records, Ms. Tsai spent two (2) days and a total of 0.6000 hours reviewing defendant's five

---

[6] Exhibits cited to without reference to a docket number are exhibits introduced during the evidentiary hearing, and are identified as either defendant or plaintiff's exhibit.

[7] On October 20, 2011, Ms. Tsai commenced her first two actions in this District as "of counsel" to the Lemberg Firm: *Ulrich v. Allied Collection Services, Inc* (Case No. 2:11-cv-01690-GMN -RJJ) and *Blodgett v. Allied Collection Services, Inc.* (Case No. 2:11-cv-01691-PMP -RJJ).  The instant action was filed on October 28, 2011.  (#1).

(5) page answer. (Plaintiff's Exhibit 11). Given Mr. Lemberg's testimony and experience in these types of suits, the court finds that Mr. Lemberg would not entrust the responsibility of the role of lead counsel to a new lawyer with Ms. Tsai's limited skills and experience.

The Billing Records, testimony, and evidence introduced at the hearing demonstrate that the Lemberg Firm ran the litigation. Ms. Tsai, and any "of counsel" attorney, are mandated to follow the Lemberg Firm's system of litigating an FDCPA action. Ms. Tsai, as "lead counsel," was only paid $500 if she settled the case, and $200 if she did not settle, yet the Lemberg Firm seeks to recover $300 an hour for her services. (Plaintiff's Exhibit 11). Ms. Hussin and Ms. Voytovych, through the Lemberg Firm, controlled the course of the action. All pleadings were prepared by Ms. Voytovych, and then reviewed by Ms. Tsai. Ms. Tsai, however, did not have the last say, as an email dated April 16, 2012, indicates that Ms. Tsai had Ms. Voytovych "confirm with [Ms. Hussin to] see if there is anything else [she] missed" with regard to discovery requests. (Plaintiff's Exhibit 34). According to the Billing Records, Ms. Hussin reviewed and edited the complaint, prior to Ms. Tsai doing so, discussed the case and complaint with Ms. Tsai, emailed Ms. Tsai regarding settlement and Ms. DeFrancisco regarding items appearing on the plaintiff's credit report, emailed opposing counsel regarding settlement several times, reviewed the status report drafted by Ms. Voytovych and emailed opposing counsel for their review as well, and discussed the fee petition with Ms. DeFrancisco. (Plaintiff's Exhibit 11). Ms. Tsai sent Ms. Hussin the fee petition for her review prior to its filing, based on Ms. Tsai's testimony at the evidentiary hearing.

Ms. Tsai admitted during her testimony that she was being trained by Ms. Hussin, and swore under oath that (1) "Tammy Hussin trained [her]," (2) she "reported to Ms. Hussin on a regular basis regarding the status of [her] cases," (3) she and Ms. Hussin "reviewed and revised the complaint together and prepared it to be filed," and (4) Ms. Hussin and she "carefully reviewed the draft complaint and edited and revised the complaint to suit the specific allegations of the client." (Ms. Tsai's Declaration #28-4). Ms. Tsai admitted during the hearing, at the beginning of day two, that she was

14

1    "local counsel" in the matter.  (#47).  As the court finds that this statement is an accurate depiction of

2    the relationship, an attorney from the Lemberg Firm should have filed an application to appear *pro hac*

3    *vice.*  LR IA10-2.

### 3.    Fee Petition

#### 1. Ms. Tsai

6         As Ms. Tsai is a licensed Nevada attorney, the court need not look at the factors in *Winterrod*

7    or *Vaiciunas.*  The court objectively evaluates whether the number of hours expended by Ms. Tsai and

8    her hourly rate were "reasonable."  *See Hensley,* 461 U.S. at 433.  The court, in its discretion, may

9    reduce or eliminate hours billed for.  *Id* at 436-37.  The Lemberg Firm billed Ms. Tsai's time at $300

10   per hour, and Ms. Tsai testified that this is reasonable, because this is the rate she billed in her private

11   practice of the JT Law Group.  (Plaintiff's Exhibit 11).  Ms. Hussin, who (1) has been "practicing in the

12   area of consumer rights since 2005, specializing in [FDCPA] litigation," (2) graduated from law school

13   in 1991, (3) is  admitted to all Federal and State Courts of the State of California, the Eastern District

14   of Michigan and Colorado, and (4) is a Managing Attorney who manages eight attorneys, also billed

15   at $300 an hour.  *Id;* (#28-9).  The court finds that it is not reasonable for Ms. Tsai, who graduated law

16   school in 2008 and does not share Ms. Hussin's experience and knowledge, especially in the area of

17   FDCPA actions (as discussed more extensively above), to bill at the same hourly rate as Ms. Hussin.

18   *See Hensley,* 461 U.S. at 433.  The court reduces Ms. Tsai's hourly rate to $100.00 per hour, a

19   reasonable hourly rate for an attorney of her skills and experience.  *Id* at 436-37.

20        Upon a review of the Billing Records, Ms. Tsai represents that she spent 4.8 hours drafting and

21   editing the fee petition and supporting affidavits.  (Plaintiff's Exhibit 11).  Testimony revealed that  Ms.

22   Tsai used a template for the fee petition and sent it to Ms. Hussin and Mr. Lemberg for their suggestions

23   and changes.  Ms. Tsai admitted that she had prepared a fee petition only one time before in Bankruptcy

24   Court, but that the petition was never filed, and that she had to research fee petitions in preparation for

25   the filing of the instant petition (#13).  The court finds that 4.8 hours for Ms Tsai to prepare the fee

26

petition is excessive.  *See Hensley,* 461 U.S. at 433.  A reasonable time to expend on preparing the fee petition in this matter is one hour.  *Id* at 436-37.  The court also finds that the 0.1000 hour spent on February 21, 2012, preparing an email that was never sent is not recoverable.  *Id.*  At an hourly rate of $100.00 for 5.1 hours of work, a reasonable fee for Ms. Tsai's is $510.00.  *Id.*

### 2. Ms. Hussin

Ms. Hussin is an out-of-state attorney who billed $300 per hour for work she performed on the instant action.  (Plaintiff's Exhibit 11).  Defendant argues that plaintiff cannot recover the fees associated with Ms. Hussin's work, as she was not admitted to practice *pro hac vice.*  (#14).  The court must address this argument and analyze the fee petition in light of the Ninth Circuit's ruling in *Winterrod* and the District Court's ruling in *Vaiciunas.*  The court must determine whether one of the two ways in which the plaintiff could recover fees for the out-of-state attorney's work exist: (1) If Ms. Hussin would have certainly been permitted to appear *pro hac vice* as a matter of course if she had applied, or (2) if Ms. Hussin's conduct did not rise to the level of "appearing" before the district court. *Winterrowd,* 556 F.3d 822-23.

### a. Would Ms. Hussin Have Been Permitted to Appear *Pro Hac Vice*

If Ms. Hussin had applied to practice *pro hac vice* in this matter, the court finds that the application would not have been granted.  Ms. Hussin is not a member of the State Bar of Nevada nor a resident of this state, and would need to submit an application to appear *pro hac vice.*  LR IA 10-2(a).  Ms. Hussin's application would need to satisfy several conditions.  *Id.*  Granting or denying her application would be left to the discretion of the court, and "[a]bsent special circumstances, repeated appearances by any attorney under this Rule shall be cause for denial of the verified petition of such attorney."  LR IA 10-2(h).  In civil cases, "more than five (5) appearances by any attorney granted under this Rule in a three (3) year period is excessive use of this Rule."  LR IA 10-2(h)(1).

Had the Lemberg Firm business plan and its repeated appearance in this district, through Ms. Hussin and Mr. Lemberg, been brought to light for consideration with regard to a *pro hac vice*

16

application by either of these attorneys, that application would have been denied.[8]

**b. Did Ms. Hussin "Appear" Before District Court**

During the hearing held on the instant motion, several witnesses testified regarding Ms. Tsai, Ms. Hussin, and the Lemberg Firm's participation in this litigation. Ms. Tsai testified that she was being supervised by Ms. Hussin in this action, and Ms. Hussin stated that she is responsible for the initial training of attorneys, such as Ms. Tsai, who are "of counsel" with the Lemberg Firm. Ms. Hussin stated that she manages "people," and not the cases, files, or the litigation as a whole. She began "supervising" Ms. Tsai in September of 2011, and the instant action was filed on October 28, 2011 (#1). The testimony of many of the witnesses revealed that in April of 2012, Ms. Tsai notified the Lemberg Firm[9] that she no longer wished to maintain the "of counsel" relationship with the Lemberg Firm. Ms. Hussin stated that since there was no other Lemberg attorney that could practice in Nevada and the case was in the final stages, Ms. Tsai agreed to remain as counsel of record, and Ms. Hussin stepped in to see the case to resolution.

An email from Ms. Hussin to defense counsel was presented to the court in support of this contention. (Plaintiff's Exhibit 36). On April 23, 2012, Ms. Hussin sent an email to defense counsel, copying Ms. Tsai, stating that she was "assisting Jen Tsai on some of her Lemberg & Associates cases," referring to the plaintiff as "our client," and asserting that she was attempting to resolve the case without having to incur the costs of completing discovery and moving for summary judgment. *Id.* From this point forward, all communications to opposing counsel regarding the action, including settlement negotiations, sending the interim status report and making changes per opposing counsel, providing

---

[8] The court granted Mr. Lemberg's application to appear in this case to provide him with an opportunity to argue these unique issues regarding his law firm, should he choose to do so. Having hired Mr. Kennedy, Mr. Lemberg chose to limit his role to that of a witness. The details of the Lemberg Firm's business plan were presented to the court after Mr. Lemberg was admitted.

[9] The witnesses could not recall if the "dis-association" with the Lemberg Firm was relayed via telephone, email, or letter, or who the information was provided to, and the court was not presented with any physical evidence of Ms. Tsai's intention to terminate the "of counsel" relationship.

17

supporting documentation, the offer of judgment, and discovery responses, were to and from Ms. Hussin, who copied Ms. Tsai.  (Plaintiff's Exhibit 37, 38, 39, 40, 41, 42, 45, 46, and 47).

In an email dated April 25, 2012, Ms. Hussin stated that Ms. Tsai was still the attorney of record, but asserted that she "will handle settlement negotiations."  (Plaintiff's Exhibit 38).  On May 1, 2012, Ms. Hussin sent an email regarding the offer of judgment to opposing counsel, stating that "we have spent a substantial amount of time on this case," that "[w]e spent time in interviewing and re-interviewing  the client, sifting thru and obtaining the evidence, establishing a violation, preparing discovery and other filings, and conducting our R26 obligations," and that she "put several hours into the case and bill[s] out at a substantially higher rate than Ms. Tsai.[10]"  (Plaintiff's Exhibit 40).  On May 11, 2012, when discussing the attorneys' fees, Ms. Hussin stated that in addition to Ms. Tsai's time, she had "spent a significant amount of time on this matter."  (Plaintiff's Exhibit 42).  Ms. Hussin testified that she did not have contact with the client.  However, on May 14, 2012, Ms. Voytovych spoke with the client on the phone and "transferred [the call] to [Tammy Hussin]" and Ms. DeFrancisco spoke with the client who "[w]anted to speak with [Tammy Hussin]."  (Plaintiff's Exhibit 11).

The Billing Records and other evidence indicate that Ms. Hussin did the following work *prior* to the April 23, 2012  "dis-association" of Ms. Tsai and the Lemberg Firm: (1) on October 26, 2011, she reviewed and edited the complaint prior to the filing and prior to Ms. Tsai's review, (2) on October 28, 2011, she discussed the case and complaint with Ms. Tsai, (3) on December 19, 2011, she emailed Ms. Tsai regarding settlement negotiations, (4) on January 9, 2012, she emailed Ms. DeFrancisco regarding an item appearing on plaintiff's credit report, and (5) reviewed discovery requests around April 16, 2012, prior to their service upon defendants.  (Plaintiff's Exhibits 11 and 34).

As evidenced by Ms. Hussin's conduct during the course of the litigation, she did not just "step in" during settlement negotiations and did "more than simply render legal support" to Ms. Tsai.  *See*

---

[10] The Billing Records and the testimony presented at the hearing demonstrate that Ms. Tsai and Ms. Hussin billed at exactly the same rate of $300 an hour.  (Plaintiff's Exhibit 11).

*Vaiciunas,* 2011 WL 4737357 *3. Ms. Hussin appeared in the action.  *Id.*  Ms. Hussin was involved in the litigation even before the complaint was filed, admitted that *they* "spent a substantial amount of time on the case," and became the point of contact with plaintiff and with opposing counsel regarding more than just settlement negotiations.  (Plaintiff's Exhibits  11, 37, 38, 39, 40, 41, 42, 45, 46, and 47). The court finds that, like in *Vaiciunas,* as local counsel Ms. Tsai was simply the attorney signing the pleadings that Ms. Voytovych drafted and Ms. Hussin approved.  *See Vaiciunas,* 2011 WL 4737357 *3. The court finds that here, Ms. Tsai's work was filtered through Ms. Hussin, rather than the other way around.  *Winterrowd,* 556 F.3d 824 (holding that the fact the out-of-state attorney's work "was at all times filtered through [the  California attorney] who was admitted to the Central District and subject to its discipline" weighed towards awarding the out-of-state attorney's fees).  As Ms. Hussin appeared in the action without being admitted *pro hac vice* and would not have been admitted if she applied, her fees are not recoverable.  *Winterrowd,* 556 F.3d 823; *Vaiciunas,* 2011 WL 4737357 *3.

### 3.    Ms. Voytovych

Ms. Voytovych billed $125.00 per hour for 6 hours of work.  (Plaintiff's Exhibit 11).  Based Ms. Voytovych's testimony and the work performed, the court finds that Ms. Voytovych is a competent paralegal who diligently acted under the supervision of the Lemberg Firm.  The hourly rate of $100.00 is reasonable.  *See Hensley,* 461 U.S. at 433.  The court also finds, however, that the following entries for administrative tasks are not recoverable:

| Date | Hours | Description |
|---|---|---|
| 10/18/2011 | 0.2000 Hours | Created new matter in PL, emailed client. |
| 10/28/2011 | 0.1000 Hours | Complaint_Stamped_Waite.pdf |
| 10/28/2011 | 0.1000 Hours | NOTICE PURSUANT TO LOCAL RULE IB 2-2: In accordance with 28 USC § 636© and FRCP 73, the parties in this action are provided with a link to the "AO 85 Notice of Availability, Consent, and Order of Reference - Exercise of Jurisdiction by a U.S. Magistrate Judge" form on the Court's website - www.nvd.uscourts.gov. Consent forms should NOT be electronically filed. Upon consent of all parties, counsel are advised to manually file the form with the Clerk's Office. (no image attached) (ECS) |
| 12/7/2011 | 0.1000 Hours | Uploaded Answer from Prolaw |

19

| | | |
|---|---|---|
| 12/9/2011 | 0.1000 Hours | Uploaded Defendant's Certificate of Interested Parties_Waite.pdf |
| 3/23/2012 | 0.2000 Hours | With OC's approval, filed JDP with court. |
| 3/26/2012 | 0.1000 Hours | Scheduling Order_Waite.pdf |
| 5/15/2012 | 0.1000 Hours | Judgment in a Civil Case_Waite.pdf |

(Plaintiff's Exhibit 11). These entries include creating a file in the ProLaw system for this action, uploading documents from the court's docket to the ProLaw system, copying a court notice into the ProLaw system, and filing the discovery plan with the court. *Id.* The court will subtract these entries from the total number of hours billed by Ms. Voytovych. *See Hensley,* 461 U.S. at 436-37. The total fees owed for Ms. Voytovych, for 5 hours at $100.00 per hour, is $500.00.

### 4.   Jody B. Burton

Ms. Burton billed for .5 hours of work at a rate of $300 per hour. (Plaintiff's Exhibit 11). Ms. Burton is a senior associate attorney at the Lemberg Firm who is "admitted to practice before the state bars in Connecticut, Pennsylvania, and the District of Columbia and is admitted to all three federal Districts in Pennsylvania, the District of Connecticut, the Northern, Southern and Eastern Districts of Texas, and the federal District Court for the District of Columbia." (#13-1). Ms. Burton billed for reviewing the case with Ms. Hussin and researching per Ms. Tsai. *Id.* The court finds that this does not amount to an appearance, and that Ms. Burton did nothing "more than simply render legal support." *See Vaiciunas*, 2011 WL 4737357 *3. The $150 billed for Ms. Burton's time is recoverable. *Id.*

### 5.   Jenny DeFrancisco

Ms. DeFrancisco billed for 1.300 hours of work at a rate of $250 per hour. (Plaintiff's Exhibit 11). Ms. DeFranscisco is an associate attorney at the Lemberg Firm and is admitted to practice before the state bars in Connecticut and New York and before the Districts of North Dakota and Nebraska. (#13-1). Ms. DeFrancisco billed 0.1000 for reviewing the plaintiff's documents and emailing plaintiff for her credit report, 0.4000 for researching per Ms. Tsai, 0.2000 for a phone call with Ms. Hussin regarding Ms. Voytovych drafting the acceptance of offer of judgment, 0.1000 for speaking with client, 0.1000 for emailing "ST and [Tammy Hussin]" regarding motion for fees, and 0.4000 for reviewing Ms.

20

1   Hussin's emails and other work done in the case, compiling time, and calling Tammy Hussin. (Plaintiff's

2   Exhibit 11). Plaintiff seeks to recover $325 for Ms. DeFrancisco's time. (#13-1).

3         The court finds that Ms. DeFranscisco did not appear in the case, that she "simply render[ed]

4   legal support," and that her time is recoverable.  *See Vaiciunas*, 2011 WL 4737357 *3.

### 6.      Legal Assistance Staff

6         Mr. Lemberg stated in his declaration attached to the fee petition that the legal assistance staff's

7   time is billed at $125.00. (#13-3). As the initials AB billed at $125.00 per hour, the court concludes that

8   this individual is considered legal assistance staff. (Plaintiff's Exhibit 11). There is no evidence before

9   the court that AB is a lawyer or paralegal, and the court finds that tasks performed by AB are

10  administrative/clerical in nature and not recoverable.

### 7.      Costs

12        Plaintiff asserts that her "counsel's expenses were limited to $426.80 for payment of fees for

13  filing the [c]omplaint and for service of the [s]ummons and [c]omplaint." (#13-1). The court finds that

14  plaintiff can recover the costs associated with filing and serving the complaint in the amount of $426.80.

## RECOMMENDATION

16        IT IS THE RECOMMENDATION of the Undersigned Magistrate Judge that plaintiff Noel

17  Waite's Motion for Attorney Fees (#13) be GRANTED in part and DENIED in part, as discussed above.

18        IT IS FURTHER RECOMMENDED that defendant Collection Services pay the attorneys' fees

19  in the amount of $1,485.00 and costs of $426.80 within thirty days from the date the District Judge issues

20  a ruling on this Report & Recommendation.

## NOTICE

22        Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

23  writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that

24  the courts of appeal may determine that an appeal has been waived due to the failure to file objections

25  within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1)

failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 16th day of October, 2012.

_____
**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**

22